[No. 15281-2-III.   Division Three.   October 21, 1997.]

RICHARD C. WOODRUFF, *Respondent*, v. RICHARD
SPENCE, ET AL., *Appellants*.

*Kenneth D. Beckley*, for appellants.

*Mark P. Wittman* of *Diesen, Wittman & Graves*, for respondent.

SCHULTHEIS, A.C.J. — Richard C. Woodruff obtained a $6,000 default judgment against Richard Spence. After the court denied his motion to vacate, Mr. Spence appealed to this court. We remanded for an evidentiary hearing to determine whether Mr. Spence was served with process and, thus, whether the court had personal jurisdiction over him. After considering conflicting evidence, the trial court determined the summons and complaint were left by a process server with a person of suitable age and discretion at Mr. Spence's residence on January 20, 1992, and that the substituted service conferred jurisdiction over Mr. Spence. On appeal, Mr. Spence raises two issues. He challenges the court's admission of several unrelated default judgments and orders entered against him or his

corporation, and he contends the process server's failure to ascertain the identity of the person he allegedly served invalidated the substitute service. We affirm.

In 1990, Mr. Woodruff sold Mr. Spence real property located in Kittitas County for $28,000. Mr. Spence assumed an underlying real estate contract and gave Mr. Woodruff $12,000 cash and a "1966 Owens powerboat" with warranty. In February 1992, Mr. Woodruff filed a complaint for damages in Kittitas County Superior Court alleging the powerboat was unseaworthy and not in good working order. An affidavit of service filed with the complaint showed Mr. Spence was personally served at his residence in King County. Mr. Spence did not appear, and in March 1992 a default judgment was entered against him for $6,000 in damages and $495.50 in costs. Mr. Spence appealed the court's denial of his motions to vacate the judgment for lack of personal service and, alternatively, to set aside the judgment and stay the proceedings in deference to an arbitration agreement between the parties. Because Mr. Spence's affidavits raised a factual issue regarding personal service on him, this court remanded for an evidentiary hearing to determine whether he was in fact served and thereby had notice of the action against him. *Woodruff v. Spence*, 76 Wn. App. 207, 883 P.2d 936 (1994).

The process server, Philip Routsis, testified he initially had difficulty locating Mr. Spence's address. He finally found the property and went there on January 11, 1992. As he drove up the long driveway, he noticed there were two houses. A man came out of one as Mr. Routsis approached. He described the man as about 65, six feet two inches, 240 pounds, wearing glasses, with a gray or white mustache and very gray hair balding on top. Mr. Routsis asked the man if he was Richard Spence. The man replied "no, he doesn't live here any more." Because the man then asked questions about the papers and what they concerned, Mr. Routsis believed he knew Mr. Spence or was Mr. Spence; however, he left without serving the papers. Mr. Routsis verified through the post office and his

company's trace department that Mr. Spence did in fact still live there, though he was rarely home, and received orders to serve someone at the house.

Mr. Routsis returned to Mr. Spence's address on January 20, 1992. As he again approached the houses, a different man came out of the same house as before. Mr. Routsis described the man as Caucasian, 45, 200 pounds, six feet four inches, balding with a mustache. When the man confirmed he was a resident, Mr. Routsis left the summons and complaint with him. He did not get the man's name, but he believed it was Mr. Spence. Mr. Routsis signed a declaration of service prepared by his office on January 22, 1992, stating he served Richard Spence by personally delivering copies of the summons and complaint to him. After Mr. Routsis later learned the man he served was not Mr. Spence, he amended the declaration of service on July 3, 1995, to state he served Richard Spence by personally leaving copies of the summons and complaint with a person of suitable age and discretion named "John Doe, who refused to state his name believed to be Richard Spence, as directed[,] who stated the above address to be the residence and usual place of abode of themselves and the subjects listed above for service."

Mr. Spence confirmed Mr. Routsis had the right address, but established he did not fit the description of either man Mr. Routsis encountered there in January 1992. Mr. Spence testified that he, his girl friend and her 12-year-old son were the only residents at the property in January 1992 and that he was in Bellingham on January 20 surveying for a Burlington Northern tie removal project. He testified none of his employees fit the description of the man allegedly served, nor did anyone else whom he knew who might have been regularly present. Mr. Spence denied receiving process and asserted he first learned from his bank about the lawsuit a year after entry of the default judgment.

During cross-examination, Mr. Spence testified he would not have ignored the summons and complaint had he

received them, but instead would have retained an attorney. He indicated he knew that a default judgment could be entered against him if he ignored service of process and testified he would not have let that happen. Pressed further, he was asked: "Not just in this case but in any other case if you received service of process do you react to it or ignore it?" Mr. Spence answered "I always react and I don't — I guess I don't know what you're getting at." After a few more questions and answers along the same line, Mr. Woodruff's attorney introduced as exhibits 2 through 7 certified file copies of various King County court records showing defaults were taken against Mr. Spence or his corporation in half a dozen cases between 1985 and 1995. While being asked about the documents Mr. Spence became sarcastic and agitated to the point of being warned by the court to sit down and stop making inappropriate comments or he would be held in contempt of court.

The court held the original defective return of service could be amended by the corrected return of service, which because it is regular in form and substance creates a presumption of proper service. The court found Mr. Spence, as the challenging party, did not meet his burden of showing by clear and convincing evidence that the service was improper. Based on the evidence presented, the court concluded substituted service was perfected under RCW 4.28.080(15), which allows service by leaving a copy of the summons and complaint at the house of the party's usual abode with some person of suitable age and discretion resident therein.

On appeal, Mr. Spence first contends the court erred in admitting into evidence portions of other legal proceedings against him to discredit his testimony. The six exhibits at issue consist of court records from six unrelated cases, half filed before this case and half filed later. Three of the cases were filed in 1985, with default judgments entered that year or the following year in each case. One case was filed in 1992 after this case was filed, one in early 1993 and the last apparently in 1995.

■ The only objection raised against the exhibits was one of relevancy.[1] The issue before the court was whether Mr. Routsis was telling the truth when he said he served an adult resident at Mr. Spence's address or whether Mr. Spence was telling the truth when he said he never received the summons and complaint and did not know of the lawsuit until a year after entry of the default judgment against him. Given Mr. Spence's testimony that he would not have ignored the summons and complaint had he received them and his sweeping assertions that he always responded to service of process, the evidence is relevant because it tends to prove a fact of consequence to the proceeding. ER 401. Though the "other cases" evidence might otherwise have been irrelevant, Mr. Spence opened the door to evidence directly contradicting his assertion that he would have appeared if he had been properly served because that was what he always did. 5 & 5A KARL B. TEGLAND, WASHINGTON PRACTICE, *Evidence* §§ 11, 227, 249 (3rd ed. 1989); *see State v. Brush*, 32 Wn. App. 445, 448-53, 648 P.2d 897 (1982), *review denied*, 98 Wn.2d 1017 (1983).

■■ Mr. Spence also contends the court erred in holding the process server perfected substituted service by leaving the documents with an unidentified person. The Washington service statute, RCW 4.28.080, requires that:

The summons shall be served by delivering a copy thereof, as follows:

. . . .

(15) In all other cases, to the defendant personally, or by leaving a copy of the summons at the house of his or her usual abode with some person of suitable age and discretion then resident therein.

A constitutionally proper method of effecting substituted service need not guarantee that in all cases the defendant

---

[1]Mr. Spence has not assigned error to admission of the documents themselves as public records under RCW 5.44.040 and ER 803(a)(8).

will in fact receive actual notice; what is essential is that the method of attempted service be reasonably calculated to provide notice to the defendant. *Wichert v. Cardwell*, 117 Wn.2d 148, 151-52, 812 P.2d 858 (1991). Service must not only be constitutionally adequate, however, it must also comply with statutory requirements. *Weiss v. Glemp*, 127 Wn.2d 726, 734, 903 P.2d 455 (1995). Here, the process server's amended return describes service in compliance with RCW 4.28.080(15).

■ ■ A facially correct return of service is presumed valid and, after judgment is entered, the burden is on the person attacking the service to show by clear and convincing evidence that the service was irregular. *Miebach v. Colasurdo*, 35 Wn. App. 803, 808, 670 P.2d 276 (1983), *aff'd in relevant part*, 102 Wn.2d 170, 685 P.2d 1074 (1984). Mr. Spence established he was not at the property the day service was accomplished and he denied receiving process. But he did not call his wife or any of his employees who were there to corroborate his testimony that no person fitting the description of the person allegedly served resided then at his property. And though he asserted he would have responded had he received process, evidence of defaults entered against him in numerous other cases (both before and after this one) cast doubt on the truthfulness of that claim. We agree with the trial court that Mr. Spence did not meet his burden.

■ Both parties requested fees in the original appeal. This court noted RCW 4.84.250 authorizes an award of fees to the prevailing party when the amount pleaded is less than $10,000, but declined to make an award because the matter was being remanded. In its order upholding the default judgment, the trial court reserved the issue of attorney fees to be awarded to the prevailing party for this court to decide. Both parties again request fees as the prevailing party under RCW 4.84.250. But Mr. Spence is not the prevailing party, and Mr. Woodruff does not qualify for a fee award because he never made a settlement offer. RCW 4.84.260; *In re Estate of Tosh*, 83 Wn.

App. 158, 165, 920 P.2d 1230 (1996), *review denied*, 131 Wn.2d 1024 (1997).

Affirmed.

BROWN, J., and THOMPSON, J. Pro Tem., concur.

Reconsideration denied November 26, 1997.

Review denied at 135 Wn.2d 1010 (1998).